Annie Laura KIMBROUGH, Plaintiff/Appellee,

v.

SECRETARY OF the UNITED STATES AIR FORCE, Defendant/Appellant.

No. 83–3697.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 4, 1985.

Decided June 28, 1985.

Neil Hoff, Tacoma, Wash., for plaintiff/appellee.

Christopher L. Pickrell, Asst. U.S. Atty., Seattle, Wash., for defendant/appellant.

Alarcon, Circuit Judge, filed concurring opinion.

Before FARRIS, ALARCON and FERGUSON, Circuit Judges.

FERGUSON, Circuit Judge:

In January of 1980, the U.S. Air Force rejected the application of Annie Laura Kimbrough, a black woman who held a GS–4 level supply clerk position, for promotion to a GS–6 level supervisory opening. Kimbrough alleged, and the district court found after a full trial, that she was rejected because of her race in violation of Title VII, 42 U.S.C. § 2000e–2(a)(1). The Air Force contends that the promotion simply went to a more qualified, white, female applicant.

## I.

Annie Laura Kimbrough, a 51-year-old black woman who had been employed by the government since 1950, worked at McChord AFB in Tacoma, Washington. She had applied for, but failed to achieve, several promotions while at McChord. In 1978, Kimbrough complained that racial discrimination caused the Air Force to deny her a promotion for which she was qualified. After pursuing her administrative remedies, Kimbrough sued the Air Force under Title VII. The district court found

that the Air Force intentionally discriminated against Kimbrough because she was black.

The trial court was presented with vast amounts of conflicting evidence concerning the promotion selection process. Out of this mass of contradictory evidence, the district court found that Kimbrough proved her case of disparate treatment. The court based this finding on many factors, including: Kimbrough's qualification for the job; Col. Witt's telephone call to his subordinate, Capt. Dehler, exerting "command influence" over the selection for the job; Col. Witt's subsequent call to Kimbrough to pressure her to withdraw her application; Capt. Dehler's decision to meet with the former supply clerks only after the colonel's call; Capt. Dehler's misstatement of the former supply clerks' consensus as to the job's requirements; Capt. Dehler's disregard for the recommendation of his advisor, Master Sergeant Solomon, a black man, that Kimbrough was most qualified for the job; Capt. Dehler's comments that Kimbrough just sat there like a lump and that he had a gut feeling that she was wrong for the job; and Col. Witt's general lack of credibility, based in part on his denial of any knowledge that Kimbrough had previously filed a discrimination complaint that would have critically affected his career. The Air Force appeals.

## II.

■ The Air Force claims that Kimbrough presented insufficient evidence of discrimination to support the district court's finding of disparate treatment. After a Title VII case is fully tried, we review the decision under the clearly erroneous standard applicable to factual determinations. *Anderson v. City of Bessemer,* —— U.S. ——, —— — ——, 105 S.Ct. 1504, 1510–11, 84 L.Ed.2d 518 (1985); *Casillas v. United States Navy,* 735 F.2d 338, 343 (9th Cir.1984). *Accord U.S. Postal Service Board of Governors v. Aikens,* 460 U.S. 711, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983) (discrimination is an ultimate question of fact). This case was fully tried.

The court found that "the reasons set forth by the defendant in this case were pretextual." Thus, the clearly erroneous standard of review applies.

■ We hold that the district court's finding of discrimination was not clearly erroneous. The court found that although Capt. Dehler embarked on his task of seeking a qualified replacement for the supervisory position fairly, subsequent events rendered his decision discriminatory. The parties stipulated that Kimbrough qualified for the job. At the conclusion of the interviews, however, Col. Witt intervened in this supply clerk promotion decision. The court found that Capt. Dehler must have told Witt that Kimbrough was the leading candidate, and that Col. Witt's subsequent actions responded to that. Col. Witt's conversation with Capt. Dehler amounted to "command influence" over the promotion decision in a manner that was outside of the normal operating procedures. Col. Witt also spoke directly to Kimbrough the next morning claiming to express "Christian" concern over her health. The court, however, found that Col. Witt was really pressuring Kimbrough to withdraw her application. Capt. Dehler then disregarded the advice of Master Sergeant Solomon about choosing Kimbrough (which Capt. Dehler was free to do); succumbed to the command influence exerted by Col. Witt; changed his understanding of the job qualifications from primarily technical expertise to primarily managerial expertise; and chose a white applicant over Kimbrough for the promotion. In addition, the court found that Capt. Dehler's comments about Kimbrough "sitting like a lump" and his "gut feeling" towards her inability to do the job provided inferential evidence of discriminatory intent. The court declined to give credence to many of Col. Witt's statements; apparently the court doubted Col. Witt's credibility, in part, because of the conflicting evidence about his claim that he did not know of Kimbrough's previous discrimination charge. The court declined to give credence to some of Capt. Dehler's testimony, in part, because of the conflict-

ing evidence about whether Capt. Dehler received a consensus from the former supervisors over the amount of managerial expertise necessary for the job.

These findings on credibility, facts, and inferences to be drawn from conflicting evidence are most properly resolved by the trier of fact. *City of Bessemer,* ──── U.S. at ──── ──── , 105 S.Ct. at 1510–15. *Gay v. Waiter's and Dairy Lunchmen's Union Local No. 30,* 694 F.2d 531, 545 n. 13 (9th Cir.1982). The findings are not clearly erroneous.

### III.

■ The Air Force also claims that the district court erred on several evidentiary rulings. We review evidentiary rulings for abuse of discretion. *Keogh v. Commissioner,* 713 F.2d 496, 499 (9th Cir.1983). We have reviewed the Air Force's assertions of error and we find no abuse of discretion and no impingement upon any substantial right of the Air Force.

### IV.

■ The Air Force next contends that the district court erroneously shifted to it the ultimate burden of persuasion that it lacked discriminatory intent. Allocating the burdens and order of presentation of proof is a legal question. *Aikens,* 103 S.Ct. at 1482 (1983); *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248 at 260 n. 12, 101 S.Ct. 1089 at 1097 n. 12, 67 L.Ed.2d 207 (Tex.1981). Thus, it is reviewable de novo. *United States v. McConney,* 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied,* ──── U.S. ────, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). We hold that the district court allocated the burdens of proof and persuasion correctly.

The Air Force points to no language in the district court's oral decision or written supplemental findings of fact that depicts a shifting of the burden of persuasion to defendant. *Cf. White v. Washington Public Power Supply System,* 692 F.2d 1286, 1288 (9th Cir.1982). The Air Force asserts, however, that the district court implicitly shifted the burden by: (1) treating subjec-

tive promotion criteria as discriminatory per se; (2) insisting that defendant show that the promotion procedure used was authorized; and (3) "an implicit shifting to defendant of the burden of proving that each of the various factors was not the reason for the promotion decision."

As to their first contention, the district court did not treat subjective criteria as per se evidence of discrimination. The district court noted only that it could not credit Col. Witt's and Capt. Dehler's proffered explanations for their hiring decision. The court also found that, contrary to the Air Force's evidence, no consensus existed among the former supply supervisors as to the degree of managerial skill needed to enter the job. It also found that Capt. Dehler's subjective attitude towards Kimbrough, as evidenced by his comments that she sat there like a lump and that he had a gut feeling about her, contradicted the actual evidence that Kimbrough had achieved recognition in her clerical position. Thus, the Air Force's factual assertion that the court treated subjective promotion criteria as discriminatory per se is incorrect. The court considered a variety of factors before concluding that discrimination existed.

The Air Force's contentions (2) and (3), above, amount to arguments that the district court impermissibly shifted to it the burden of disproving discrimination. We therefore review, briefly, the appropriate allocation of the burdens of proof and persuasion and the methods by which the ultimate task of persuasion may be accomplished.

The burden of proof in Title VII disparate treatment cases is allocated as follows:

First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." ...
Third, should the defendant carry this burden, the plaintiff must then have an

opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093 (1981) (citations omitted). *Accord Aikens,* 103 S.Ct. 1478; *Casillas,* 735 F.2d at 343.

In this case, the parties stipulated that the plaintiff had proved her prima facie case. Thus, Kimbrough established a "legally mandatory, rebuttable presumption," *Burdine,* 450 U.S. at 254 n. 7, 101 S.Ct. at 1094 n. 7, of discrimination.

Then, the Air Force apparently articulated a legitimate, nondiscriminatory reason for its promotion decision by calling several witnesses. The Air Force's "articulation" of these reasons "suffice[s] to meet the employee's prima facie case of discrimination." *Board of Trustees of Keene State College v. Sweeney,* 439 U.S. 24, 25, 99 S.Ct. 295, 295, 58 L.Ed.2d 216 (1978). *Accord Lynn v. Regents of the University of California,* 656 F.2d 1337 (9th Cir.1981), *cert. denied,* 459 U.S. 823, 103 S.Ct. 53, 74 L.Ed.2d 59 (1982).

The Air Force seems to be questioning the effect that the district court gave to its "articulation" of legitimate, nondiscriminatory reasons. The effect it should have been given has recently been reiterated by the Supreme Court:

> [W]hen the defendant fails to persuade the district court to dismiss the action for lack of a *prima facie* case, and responds to the plaintiff's rejection, the fact finder must then decide whether the rejection was discriminatory within the meaning of Title VII. At this stage, the *McDonnell [Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 688 (1973) ]-*Burdine* presumption "drops from the case," … and "the factual inquiry proceeds to a new level of specificity."

*Aikens,* 103 S.Ct. 1478, 1482 (1983). However, despite the fact that the *presumption* of discrimination drops from the case,

we do not imply that the trier of fact no longer may consider evidence previously introduced by the plaintiff to establish a prima facie case. A satisfactory explanation by the defendant destroys the legally mandatory inference of discrimination arising from the plaintiff's initial evidence. Nonetheless, this evidence and inferences properly drawn therefrom may be considered by the trier of fact on the issue of whether the defendant's explanation is pretextual. Indeed, there may be some cases where the plaintiff's initial evidence, combined with effective cross-examination of the defendant, will suffice to discredit the defendant's explanation.

*Burdine,* 450 U.S. at 255 n. 10, 101 S.Ct. at 1095 n. 10.

■ Thus, after plaintiff's prima facie case and defendant's "articulation," the trier of fact decides the question of discrimination based on the entire case. In this case, the plaintiff proved her prima facie case of discrimination by a preponderance of the evidence—the parties stipulated to this. The Air Force articulated reasons for its decision in response to the prima facie case, but the district court did not believe them. This articulation forced the presumption of discrimination to drop from the case, but the court's ultimate finding of discrimination was properly based not on the presumption, but on plaintiff's direct and indirect evidence, including her initial, stipulated, prima facie case, her own witnesses and evidence, her cross-examination of the Air Force witnesses, and the factfinder's disbelief in defendant's credibility. She need do no more; to prevail, *Burdine* permits her to do quite a bit less. 450 U.S. at 255 n. 10, 101 S.Ct. at 1095 n. 10.

### V.

■ Finally, the Air Force claims that the district court erred in following the supposed mandate of an Eighth Circuit case, *Royal v. Missouri Highway & Transportation Commission,* 655 F.2d 159, 164 (8th Cir.1981), to assign less credibility to defendant's witnesses merely because they

are white. This argument relies upon absolutely no sound premises: *Royal* did not say that; *Royal* was not incorrectly decided; and the district court did not rely on *Royal.* Not surprisingly, the Air Force's conclusion is also incorrect.

First, *Royal* held:

Although not illegal *per se,* subjective promotion procedures are to be closely scrutinized because of their susceptibility to discriminatory abuse. ... The mere fact that the subjective process is intended to recognize merit does not necessarily alleviate its susceptibility to discriminatory abuse. When the evaluation is in any degree subjective and when the evaluators themselves are not members of the protected minority, the legitimacy and nondiscriminatory basis of the articulated reason for the decision should be subject to particularly close scrutiny by the trial judge.

*Royal,* 655 F.2d 159, 164 (8th Cir.1981). This is not a holding that white witnesses are inherently less credible than black or other minority witnesses.

Second, the district court did not rely upon *Royal.* He did bring it to the attention of the parties early in the trial. The judge may have even, initially, scrutinized closely the testimony of Capt. Dehler because of *Royal.* However, at the conclusion of the trial, the court held:

The defendant is aware that I mentioned in reading from one of the cases that I read, I think it was the Royal case, that the Eighth Circuit, ... thought that the trial court should closely scrutinize the opinions of evaluators who were not [sic] white. I have looked at it, but I am not persuaded by that particular position because I tried to closely scrutinize all testimony and evidence before me.... [T]o this Court it makes no difference whether the selector was white or black, or the evaluators are white or black, it is my responsibility to determine the questions of fact based only upon the evidence, the most credible evidence.

The Air Force's argument that the district court erroneously followed *Royal* therefore fails.

## CONCLUSION

The district court's finding of discrimination was not clearly erroneous. The exclusion of certain evidence offered by the Air Force was not an abuse of discretion and did not prejudice the Air Force's rights; the court had much other evidence upon which to base its decision. The court correctly allocated the burdens of proof and persuasion, and drew difficult findings of fact from conflicting testimony. These findings were not clearly erroneous. The record establishes that the district court did not consider witnesses' skin color when it made its findings of fact. This was simply a trial where the district court found facts and determined credibility on the basis of conflicting evidence.

The decision is AFFIRMED.

ALARCON, Circuit Judge, concurring:

I concur in the opinion of the majority insofar as it affirms the judgment of the district court.

The government stipulated that the plaintiff had proved a prima facie case of discrimination. The trial judge did not believe the witnesses offered by the Air Force in support of its defense that there were legitimate reasons to explain the failure to promote Kimbrough. Instead, the district court, after considering all the evidence, was convinced by a preponderance of the evidence that the Air Force discriminated against Kimbrough because of her race and that the reasons offered to justify the failure to promote her were pretextual. Under such circumstances, we must affirm.