810 F.2d 200
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Sally J. CHILDS, Plaintiff-Appellant,
v.
GREEN LOCAL SCHOOL DISTRICT, Defendant-Appellee.
 No. 86-3011.
 United States Court of Appeals, Sixth Circuit.
 Nov. 21, 1986.
 
 Before ENGEL, JONES and KRUPANSKY, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff, Sally Childs, appeals a judgment entered in favor of defendant school district in her suit charging gender discrimination in violation of her civil rights under Title VII. Appellant bases her Title VII claim on the defendant school district's improper and discriminatory employment inquiries regarding her family, and on the school district's failure to hire her for the position of head band director instead of an allegedly less qualified male, Steven Stroup.
 
 
 2
 The stipulated facts show that appellant, Mr. Stroup, and three other candidates were interviewed from a pool of approximately 50 applicants; appellant, Mr. Stroup, and one other candidate were requested to return for second interviews. The same group of people did not participate in each interview, and no records were kept concerning the selection or interview process. The school's qualifications for the position of band director were prior head band director experience or prior assistant band director experience in a large or moderately sized school district, a bachelor's degree and certification in instrumental music, and proven ability to increase enrollment and participation in instrumental music programs. Appellant possessed a master's degree and professional certificate in instrumental music. Mr. Stroup had a bachelor's degree and provisional certificate. The school district's stated reasons for hiring Mr. Stroup were that he appeared more assertive or aggressive, had shown initiative in bringing materials to the interviews, and had more directly addressed discipline concerns.
 
 
 3
 Childs asserts that the defendant school board did not establish a legitimate, nondiscriminatory reason for rejecting her for the position of band director; she bases this assertion on the lack of safeguards in defendant's subjective hiring criteria and on defendant's failure to maintain records throughout the hiring process. She requests this court to reverse the entry of judgment below for the defendant school district. The school district argues that in the absence of proof of discriminatory intent, neither the lack of safeguards nor the absence of records violates Title VII.
 
 
 4
 In a carefully considered opinion filed in the district court on November 21, 1985, United States District Judge David D. Dowd, Jr. concluded that although plaintiff had made out a prima facie case of sex discrimination under Title VII, McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), the defendant school district articulated a legitimate, nondiscriminatory and nonpretextual reason for its decision to hire Steven Stroup. While Judge Dowd recognized that "the selection process employed by [school district management] clearly was not the best example of a good hiring procedure," nevertheless, the determination that Mr. Stroup was overall the better qualified candidate for the position of band director was not motivated by discriminatory intent. From a review of the record, we agree.
 
 
 5
 Accordingly for the reasons stated in the memorandum opinion of Judge Dowd, cited above, the judgment of the district court is AFFIRMED.
 
 
 6
 JONES, Circuit Judge, dissenting.
 
 
 7
 I disagree with the majority of this panel on a threshold legal issue regarding the three-part analysis applicable to this Title VII case, as set forth in Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248 (1981), and its progeny. In my opinion, the district court should not have reached the issue of pretext because the nondiscriminatory reason proffered by the appellee school district in support of its action was legally insufficient. For this reason, I respectfully dissent.
 
 
 8
 Because my analysis requires a fuller understanding of the totality of the circumstances surrounding the school district's interviewing process, I will expand briefly on the majority's statement of facts. Unless otherwise indicated, the following facts were contained in the district court's opinion and are uncontested by the parties.
 
 
 9
 The school district did not have a written policy or written criteria for hiring or interviewing teachers. Moreover, it did not keep records of the band director applicants, the general flow of male and female teacher applicants, or the interviewing process in this instance. The initial interviews began with Dr. Daugherty, the school district superintendent, giving a brief description of the band director position followed by a series of "ice breaker" questions. These questions included inquiries as to why the candidate was in the area, what the candidate's spouse did, and whether the candidate had any children. Appellant Childs testified at trial that she was also asked by Daugherty how her children would be taken care of during the day. Daugherty denied asking this question. In his opinion, the district judge noted the conflicting testimony but did not resolve the dispute, stating that it was not critical to the disposition of the case. The remainder of the first interview consisted of substantive questions regarding the applicants' qualifications, work experiences, and a discussion of the perceived band discipline problem within the school district.
 
 
 10
 Following the first interview, three candidates, including appellant, were called back for second interviews conducted by Mr. Goldsberry, the high school principal, and attended by Mr. Brown, the middle school principal, and various members of the band booster club. The following facts are of central importance. The same members of the interviewing committee did not interview all three candidates at the second interview. There were no written questions, interview guidelines, or written specifications as to what the job required distributed to members of the interviewing committee. The candidates were not asked to bring any materials to either interview. Finally, no notes were taken by the interviewers at either interview.
 
 
 11
 Subsequently, Ms. Childs was informed that one of the two male candidates, Mr. Stroup, was selected for the position of band director. At trial, Dr. Daugherty and Mr. Goldsberry testified that the reason for Stroup's selection was that he was more "assertive," "aggressive," had a "stronger personality," and had better prepared himself for the interview by bringing additional materials as well as more directly addressing the discipline problem. Ms. Childs testified that she had been told the second interview would be an informal, get-acquainted meeting with the band booster club. Daugherty and Goldsberry conceded that Ms. Childs was qualified for the position in terms of education and experience and had received favorable recommendations from previous employers.
 
 
 12
 In his opinion, the district judge concluded that Childs had established a prima facie case of disparate treatment. He did not, however, make any findings as to whether Ms. Childs was more objectively qualified than Mr. Stroup. He then concluded that the defendant school district had articulated a legitimate, nondiscriminatory reason for the selection of Mr. Stroup over Ms. Childs, noting that the reason was "sufficiently specific and supported by the facts to satisfy the burden [of production]." Nevertheless, the district court agreed with the testimony of plaintiff's expert that "the hiring procedures used by Dr. Daugherty and Mr. Goldsberry did not meet professional standards." Citing this court's opinion in Grano v. Department of Development, 699 F.2d 836, 837 (6th Cir.1983) (per curiam), the district court characterized the issue as "whether the use of such subjective criteria by the Green Local School District illegally discriminated against this plaintiff in this situation." After weighing the testimony of both sides regarding the procedures, the subjective criteria used, and the failure of the school district to keep proper employment records, the court ultimately concluded that Ms. Childs was unable to establish that the school district's proffered reason was pretextual and was therefore unable to carry her burden of persuasion that she was the victim of sex discrimination.
 
 
 13
 Since a Title VII action boils down to the ultimate factual question whether a particular plaintiff was discriminated against, appellate courts ordinarily review for clear error under Fed.R.Civ.P. 52(a). See Henry v. Lennox Indus., Inc., 768 F.2d 746, 749-50 (6th Cir.1985). However, the "clearly erroneous" standard of Rule 52(a) does not apply to pure questions of law or questions of mixed law and fact. Pullman-Standard v. Swint, 456 U.S. 273, 287-88 (1982). In the case at bar, appellant does not seek review of the ultimate factual determination per se. Rather, she challenges the predicate determination of law that the school board's articulated reason for not hiring her was "legally sufficient to justify a judgment for the defendant." Texas Dept. of Community Affairs v. Burdine, 450 U.S. at 255. It is my opinion that on this narrow question of law, the district court's holding is freely reviewable, unconstrained by Rule 52(a).
 
 
 14
 The district court ruled that Childs had established her prima facie case under McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). This showing "raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." Furnco Constr. Corp. v. Waters, 438 U.S. 567, 577 (1978). Unless the school district was able to articulate a legitimate, nondiscriminatory reason for its action, judgment should have been entered for Childs because no issue of fact remained. Burdine, 450 U.S. at 254. The Burdine Court described the justification for shifting the burden of production temporarily to the defendant as follows:
 
 
 15
 Placing this burden of production on the defendant thus serves simultaneously to meet the plaintiff's prima facie case by presenting a legitimate reason for the action and to frame the factual issue with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate pretext. The sufficiency of the defendant's evidence should be evaluated by the extent to which it fulfills these functions.
 
 
 16
 Id. at 255-56.
 
 
 17
 Childs argues that the school district's asserted reason for not hiring her failed to meet this legal standard because it was based on entirely subjective criteria and was completely devoid of safeguards. This court has previously discussed the problems with entirely subjective selection procedures in which the decisionmakers are nonmembers of the plaintiff's protected group. See Rowe v. Cleveland Pneumatic Co., 690 F.2d 88, 93 (6th Cir.1982) (per curiam). While it is true that such subjective procedures do not violate Title VII per se, Grano, 699 F.2d at 837, "they do provide a ready mechanism for discrimination, permitting ... prejudice to affect and often control promotion and hiring decisions." Rowe, 690 F.2d at 93. Therefore, where the decisionmakers are nonmembers of plaintiff's protected group, "the legitimacy of the articulated [subjective] reason for the employment decision is subject to particularly close scrutiny...." Grano, 699 F.2d at 837; see also Rowe, 690 F.2d at 93 ("While we recognize that, in some circumstances, employment decisions may be made on the basis of such subjective criteria, any procedure employing such subjective evaluations will be carefully scrutinized in order to prevent abuse.").
 
 
 18
 The need for safeguards is obvious. Though an articulated subjective reason may be "nondiscriminatory," there must be some basis on which the court can gauge its trustworthiness. Furthermore, an articulated subjective reason without safeguards does not provide the plaintiff a "full and fair opportunity to demonstrate pretext." Burdine, 450 U.S. at 256. The type of safeguards that would have made a difference in the instant case include: uniform and predetermined questions asked of the candidates at the interviews, identity of the interviewing committee members, preinterview distribution of the candidates' resumes to the committee members, and provision of a written explanation of the job requirements to both the committee members and the candidates. As it happened, the various candidates did not have a uniform interviewing experience, and at least arguably, did not have a truly equal opportunity.
 
 
 19
 Aside from the lack of safeguards in the interviewing process, the school district was also deficient in retaining employment and application records as required by 42 U.S.C. § 2000e-8(c) (1982), and 29 C.F.R. § 1602.40 (1986). Although this did not affect Childs' ability to interview, it significantly encumbered her opportunity to demonstrate that the proffered subjective reason for her not being hired was pretextual. It is true that improper recordkeeping is not a prima facie demonstration of employment discrimination. Casillas v. United States Navy, 735 F.2d 338, 345 (9th Cir.1984). Nevertheless, the regulatory obligation to preserve records "was clearly designed to protect Title VII plaintiffs from an employer's destruction of possibly damaging evidence." EEOC v. American Nat'l Bank, 652 F.2d 1176, 1195 (4th Cir.1980); cf. Casillas, 735 F.2d at 345 ("The employer, of course, risks not having documentation with which to convince the trial court.").
 
 
 20
 The school district argues that Childs has misstated the nature of her appeal. The school district contends that Childs is, in fact, disputing the correctness of the ultimate factual determination of nondiscriminatory treatment. The appellee's argument is that in the absence of independent evidence of discriminatory intent, an employer's use of subjective criteria in hiring does not violate Title VII. Quite obviously, the school district has turned the proper inquiry on its head.
 
 
 21
 Until the legal sufficiency of the articulated subjective, nondiscriminatory reason is established, the plaintiff still enjoys the presumption of discrimination arising from her prima facie showing. It plainly is erroneous to argue that, at that point in the evidentiary inquiry, plaintiff has to come forward with independent evidence of discriminatory intent to impugn the subjective reason asserted by the defendant. The very purpose of the McDonnell Douglas analysis is to relieve the plaintiff of the burden of showing actual intent in the early stages of her case.
 
 
 22
 Moreover, the second stage of the Title VII analysis, as articulated in Burdine and further described in Rowe, places the onus squarely on the defendant to articulate a legitimate, nondiscriminatory reason for its actions "which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." Burdine, 450 U.S. at 257. I submit that this court must look not only to the subjective reasons asserted but also the circumstances surrounding the decision. If those circumstances are not such as would justify reliance on the employer's assertion, then the reason must be held to be legally insufficient.
 
 
 23
 The school district relies on a single quote from the Grano case, taken out of context: "The ultimate issue in each case is whether the subjective criteria were used to disguise discriminatory action." 699 F.2d at 837. It is true that this is the "ultimate" issue in case involving articulated subjective reasons. Conceding this, however, the school district's argument that independent proof of discriminatory intent is required does not follow. In Grano, the legitimacy of the subjective, nondiscriminatory reason was assumed. The court observed that the employer had actually, albeit subjectively, evaluated plaintiff's actual work performance. Therefore, the prima facie presumption of discriminatory treatment had dropped from the case and the "ultimate issue" for review was whether the subjective criteria disguised discriminatory intent. In the case at bar, only the legal sufficiency of the articulated reason is directly challenged. Until that legal sufficiency is established, the latter issue discussed in Grano does not arise. Failure to establish the legal sufficiency of the articulated reason results in judgment for the plaintiff on the strength of her prima facie presumption. See Burdine, 450 U.S. at 254.
 
 
 24
 In my opinion, the school district's articulated subjective reasons for refusing to hire the appellant are legally insufficient under Burdine. The interviewing process which gave rise to these subjective reasons was wholly inadequate in terms of safeguards. This case is further distinguishable from those cases like Grano where the subjective reason was an evaluation of the plaintiff's actual work performance. See Grano, 699 F.2d at 837. Ms. Childs had never worked for the school district, and the only knowledge that the school district had of her past work performance was from favorable references. Moreover, the school district was derelict in its recordkeeping obligation. This had the effect of depriving Childs of her ability to prove discriminatory impact from the subjective procedures. On the whole, the procedures implemented by the school district were so lax and so subjective that reasons asserted by it for hiring Stroup rather than Childs for the band director job denied Childs a "full and fair opportunity to demonstrate pretext." Burdine, 450 U.S. at 256. For these reasons, the school district's articulated reason is legally insufficient and judgment should have been entered for the plaintiff.
 
 
 25
 Accordingly, I would reverse the judgment of the district court as to liability and remand this case for an award of appropriate relief.