[No. B047646. Second Dist., Div. Five. Aug. 10, 1990.]

UNIVERSITY OF SOUTHERN CALIFORNIA, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
BETH MILLER, Real Party in Interest.

**COUNSEL**

Quinn, Kully & Morrow, Margaret M. Morrow and Lisa S. Kantor for Petitioner.

No appearance for Respondent.

Marcelle Philpott-Byrant and Hadassa K. Gilbert for Real Party in Interest.

---

**OPINION**

**TURNER, J.—**

## I. INTRODUCTION

Plaintiff, Dr. Beth Miller, a tenured associate professor in the department of Spanish and Portuguese at the University of Southern California (U.S.C.), filed suit on April 12, 1985, against U.S.C. and various university employees for breach of the implied covenant of good faith and fair dealing, employment discrimination in violation of the Fair Employment and Housing Act (Gov. Code, § 12900 et seq.) and intentional infliction of severe emotional distress. In her complaint, Dr. Miller alleged that in 1983, U.S.C. and its employees discriminated against her because she was a woman by refusing to promote her from the rank of associate professor to that of a full professor. Various defendants filed a summary issue adjudication motion (Code Civ. Proc., § 437c, subd. (f)) seeking a pretrial determination of the following issue: "Miller cannot demonstrate any facts in support of her claim under Government Code section 12940 that she was denied promotions to full professor in 1983 and 1987 for sexually discriminatory reasons." The summary issue adjudication motion was denied as to this issue. U.S.C. filed a petition for writ of mandate seeking to set aside the order denying the summary issue adjudication motion. This court notified the parties that we were considering issuing a peremptory writ of mandate in the first instance. (Code Civ. Proc., § 1088; *Palma* v. *U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 177-182 [203 Cal.Rptr. 626, 681 P.2d 893].) The petition is granted.

## II. STATE OF THE PLEADINGS

Dr. Miller sued U.S.C. as well as its president, James Zumberge, and Dean Marshall Cohen on three different theories. There are factual allegations which are common to all three causes of actions. Dr. Miller alleged that in 1976, she was hired by all three defendants as an associate professor of Spanish and Portuguese. In 1976 and 1977, she was employed to act as the chair of the department of Spanish and Portuguese. Her duties were

those specified in the U.S.C. faculty handbook. Prior to 1983, the complaint alleged that she was "regularly praised for her teaching, research and publications (becoming one of the leading scholars in the world in her field)." Plaintiff was granted tenure and at all times prior to the events in 1983 when she was denied promotion to the rank of full professor, she performed her duties "satisfactorily, completely, and diligently." In 1983, her request to be promoted to the rank of full professor was denied.

On May 21, 1984, she filed "charges" against U.S.C. based on gender discrimination with the Office for Civil Rights. On May 23, 1984, she filed the same "charges" with the Equal Employment Opportunities Commission as well as the California Department of Fair Employment and Housing. Since she filed these claims with the federal and state governments, the complaint alleged that she had been harassed, denied "fair merit consideration," and prevented from receiving a "proper increase in salary." The complaint further alleged that she was denied certain benefits including use of a graduate research assistant and reimbursement for expenses as a director of a summer program. Also, the complaint alleged that she had been removed from the summer program and she was denied her request for a sabbatical leave. Her complaint sought damages including punitive damages as well as attorney fees. Additionally, plaintiff requested injunctive relief in the form of an order that she be promoted as of November 29, 1983, to the rank of full professor.

### III. Defendants' Evidence in Support of the Summary Issue Adjudication Motion

#### A. 1983 Promotion Request

The evidence cited in U.S.C.'s separate statement of undisputed facts indicated that in 1983, pursuant to normal university policies, an ad hoc committee was formed by Dean Marshall Cohen to evaluate Dr. Miller's promotion request. Doctors Marta Morello-Frosch, Paul Alie, Alexander Moore, Moshe Lazar, and Howard Young were selected to serve on the ad hoc committee. Dr. Miller was considered for promotion along with two male professors. The ad hoc committee unanimously recommended that Dr. Miller and one of her male colleagues not be promoted but recommended that the remaining male be promoted. Ultimately however, he was not promoted. In support of its motion for summary issue adjudication, U.S.C. filed declarations by all five members of the ad hoc committee which indicated that the recommendation against promoting Dr. Miller was not based on her gender. Rather, the decision not to promote was premised on the established criteria used by U.S.C. in making promotion

decisions—scholarship, service, and teaching. Furthermore, the report filed by the ad hoc committee contained no evidence of gender bias in any form. Based on his review of the ad hoc committee report and Dr. Miller's dossier, Dean Cohen denied her promotion request. Dean Cohen stated that Dr. Miller's gender was not a consideration in the decision to deny her request for promotion to the rank of full professor.

Additionally, certain discovery responses were filed in conjunction with the summary issue adjudication motion. Prior to the hearing on the motion, U.S.C. propounded admissions requests and Dr. Miller responded to the requests. She admitted that no member of the ad hoc committee acted "in a sexually discriminatory manner" in voting against recommending that she be promoted to full professor in 1983. Furthermore, at a session at her deposition, Dr. Miller conceded that the ad hoc committee did not discriminate her on the basis of her gender in 1983.

### B. 1987 Promotion Request

Dr. Miller later renewed her request that she be considered for promotion. Once again, an ad hoc committee was formed. Professors Mario Saltarelli, Alexander Moore, and Moshe Lazar of U.S.C. were appointed to the 1987 committee. Dean Cohen also appointed two professors from outside U.S.C.—Doctors Maria Louisa Bostos of City University of New York and Birute Ciplijauskiate of the University of Wisconsin. Doctors Bostos and Ciplijauskiate were selected because they were not associated with U.S.C. Moreover, Dean Cohen "wanted two women to serve on the committee because [he] felt this was the best way to ensure that there was no sexual discrimination." The committee was advised to follow the guidelines of U.S.C.'s 1984 Faculty Handbook and, if promotion was not recommended, the committee was to set forth the steps Dr. Miller ought to take to earn promotion to the rank of full professor. The committee was charged with evaluating Dr. Miller and Dr. James Parr for promotion.

The 1987 ad hoc committee unanimously recommended that Dr. Miller not be promoted. All five committee members filed declarations stating that the recommendation against promotion was premised solely on Dr. Miller's record of scholarship, service, and teaching. All five committee members denied that Dr. Miller's gender had anything to do with the recommendation against promotion. One of the ad hoc committee members, Dr. Alexander Moore, was "extremely disappointed" by Dr. Miller's dossier and her most recent work. Another committee member, Dr. Mario Saltarelli, stated that the committee unanimously agreed that "Dr. Miller had not progressed to the level of scholarly achievement necessary to advance to full

Professor." Dr. Maria Bostos, who also served on the ad hoc committee, filed a declaration which stated that Dr. Miller's "gender had no bearing on my decision to recommend against her promotion. Indeed, if I took gender into account at all, it was in a manner that was positive to Beth Miller." Dr. Birute Ciplijauskiate's declaration related: "Since I am female and I am aware that women are often subject to discrimination and sometimes not promoted when they are well qualified, I approached the Beth Miller review with heightened concern, determined to ensure that Beth Miller's evaluation was fair and impartial. Unfortunately for Beth Miller, I found her writing style to be poor and to have become worse over time." The ad hoc committee's report forwarded to Dean Cohen by Dr. Moshe Lazar concluded that there were "no grounds for promotion in any of the three areas evaluated: teaching, scholarship, and service."

Dean Cohen forwarded the written ad hoc committee report to the humanities division personnel committee. The humanities division personnel committee reviewed the report and voted to recommend that Dr. Miller not be promoted. The chair of the committee, Dr. John Hockins, submitted a declaration in which he denied that Dr. Miller's gender was considered in the determination not to promote her. Dean Cohen reviewed the ad hoc committee report as well as the written humanities division personnel committee report. As was his normal practice, he did not override the two recommendations, and Dr. Miller was once again not promoted. Dean Cohen stated that neither her gender nor the present lawsuit had any effect on his decision to deny Dr. Miller's 1987 promotion request. Dean Cohen noted that a "long-awaited book on Rosario Castellanos was very disappointing and could not justify her promotion" and that "her performance in the area of service and teaching [were] insufficient to justify her promotion."

IV. THE EVIDENCE FILED IN OPPOSITION TO THE SUMMARY ISSUE ADJUDICATION MOTION

After all of the evidentiary objections were sustained, the admissible evidence produced by Dr. Miller was as follows. Prior to Dean Cohen's appointment as the Dean of Humanities, College of Letters, Arts and Sciences, Dr. Miller met with Dean Cohen's predecessor, Dean David Malone, to discuss the review process for promotion. Both Dr. Miller and Dean Malone agreed that a committee would be formed to review her qualifications. Dean Malone never said that Dr. Miller's promotion request would be considered in conjunction with other promotion requests. After Dean Cohen assumed office, he never discussed the composition of the ad hoc committee with her. As in the case of Dean Cohen, former Dean

Malone did not tell Dr. Miller that she would be considered in conjunction with other department members for promotion. The first time that she discovered that other department members had been reviewed by the ad hoc committee was when she received a copy of the 1983 committee's report.[1] A declaration filed by Dr. Marta Morello-Frosch, a member of the 1983 ad hoc committee, contradicted certain collateral details of the declarations of the other committee members.

## V. Discussion

■ The respondent court should have granted the summary issue adjudication motion. ■ Because Dr. Miller's sex discrimination lawsuit pursuant to Government Code section 12940 is analogous to a federal title VII claim (42 U.S.C. § 2000e), it is evaluated under federal law interpreting title VII cases. (*Mixon* v. *Fair Employment & Housing Com.* (1987) 192 Cal.App.3d 1306, 1316 [237 Cal.Rptr. 884]; *County of Alameda* v. *Fair Employment & Housing Com.* (1984) 153 Cal.App.3d 499, 504 [200 Cal.Rptr. 381].) The test of whether a plaintiff has been subject of gender discrimination was described by the United States Supreme Court in *Texas Dept. of Community Affairs* v. *Burdine* (1981) 450 U.S. 248, 252-253 [67 L.Ed.2d 207, 214-215, 101 S.Ct. 1089] as follows: "In *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792 (1973), we set forth the basic allocation of burdens and order of presentation of proof in a Title VII case alleging discriminatory treatment. First, the plaintiff has the burden of proving by a preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for the employee's rejection.' *Id.* at 802. Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons but a pretext for discrimination." (Fns. omitted.) The present case involves the second aspect of the analysis set forth in *McDonnell Douglas Corp.* v. *Green* (1973) 411 U.S. 792 [36 L.Ed.2d 668, 93 S.Ct. 1817] and *Texas Dept. of Community Affairs.* During a trial, once a plaintiff in a case involving an unlawful refusal to promote establishes a prima facie case of discrimination, the burden shifts to the defendant to rebut that prima facie showing "by producing evidence that the plaintiff was rejected . . . for a legitimate, nondiscriminatory reason." (*Texas Dept. of*

---

[1] The bulk of Dr. Miller's declaration and virtually all of the declaration of Hadassa K. Gilbert were inadmissible for various reasons including the fact that portions of those affidavits were hearsay, based on conclusions, violative of the best evidence rule, and contradicted binding discovery admissions. (*D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 21-22 [112 Cal.Rptr. 786, 520 P.2d 10].)

*Community Affairs* v. *Burdine, supra*, 450 U.S. at p. 254 [67 L.Ed.2d at p. 216].) The responsibility of the defendant is to "clearly set forth, through the introduction of admissible evidence, the reason for the plaintiff's rejection." (*Id.* at p. 255 [67 L.Ed.2d at p. 216], fn. omitted.) The explanation of reasons for the refusal to promote "must be clear and reasonably specific." (*Id.* at p. 258 [67 L.Ed.2d at p. 218].)

■ Although the burden of proof in a title VII action claiming an unjustifiable refusal to promote ultimately rests with the plaintiff (450 U.S. at p. 253 [67 L.Ed.2d at p. 215]), in the case of a motion for summary judgment or summary issue adjudication, the burden rests with the moving party to negate the plaintiff's right to prevail on a particular issue. (*Barnes* v. *Blue Haven Pools* (1969) 1 Cal.App.3d 123, 127 [81 Cal.Rptr. 444].) In other words, the burden is reversed in the case of a summary issue adjudication or summary judgment motion. (*Haskell* v. *Carli* (1987) 195 Cal.App.3d 124, 130 [240 Cal.Rptr. 439]; *Security Pac. Nat. Bank* v. *Associated Motor Sales* (1980) 106 Cal.App.3d 171, 179 [165 Cal.Rptr. 38].) ■ In any event, either at the time of trial or a pretrial summary issue adjudication motion, the burden would rest with U.S.C. to prove that there was " 'some legitimate, nondiscriminatory reason . . . .' " (*Texas Dept. of Community Affairs* v. *Burdine, supra*, 450 U.S. at p. 253 [67 L.Ed.2d at p. 215]) for refusing to promote Dr. Miller in 1983 and 1987.

In the present case, U.S.C. sustained its burden. U.S.C. offered the declarations of 14 persons who served on either or both of the 1983 and 1987 ad hoc committees or participated in some other way in the evaluation process. These declarations established that Dr. Miller was denied promotion based on neutral nondiscriminatory criteria, her gender was not discussed at any time during the evaluation process, and gender was not a factor in the decision to recommend against her promotion. Furthermore, U.S.C. supported its motion with excerpts from Dr. Miller's deposition and her responses to admissions requests in which she admitted that none of the individuals who evaluated her acted in a sexually discriminatory manner when they voted not to recommend her for promotion in 1983. These discovery responses were binding on her in connection with the summary issue adjudication motion. (*D'Amico* v. *Board of Medical Examiners, supra*, 11 Cal.3d at p. 21.) This evidence was sufficient to constitute, as a matter of law, the articulation of some " 'legitimate, nondiscriminatory reason for the employee's rejection.' " (*Texas Dept. of Community Affairs* v. *Burdine, supra*, 450 U.S. at p. 253 [67 L.Ed.2d at p. 215].)

It thus became incumbent upon Dr. Miller to offer evidence (*Conn* v. *National Can Corp.* (1981) 124 Cal.App.3d 630, 638 [177 Cal.Rptr. 445])

demonstrating the existence of a triable material controversy as to whether U.S.C.'s stated reasons for declining to promote her were either untrue or "a pretext for discrimination." (*Texas Dept. of Community Affairs* v. *Burdine, supra*, 450 U.S. at p. 253 [67 L.Ed.2d at p. 215].) Dr. Miller has failed to present such evidence. The only admissible evidence related to whether she was correctly informed of the makeup of the 1983 ad hoc committee and certain collateral details of 1983 ad hoc proceedings. The respondent court quite correctly sustained U.S.C.'s objections to most of the evidence submitted by Dr. Miller. The evidence relied upon her did not create a triable material controversy as to whether the refusal to promote her was for sexually discriminatory reasons.

We respectfully disagree with the respondent court's statement of evidence and reasons for denying the summary issue adjudication motion. In complying with its responsibility to cite the evidence which created a triable material controversy (Code Civ. Proc., § 437c, subd. (f)), the respondent court made the following ruling in its December 18, 1989, memorandum: "Put simply, we have a strong showing that the committee did not consider gender in reaching its recommendation. The plaintiff contends, that although her field is Spanish-Portuguese literature and her specialty within that field is feminist writings, the fact that her own work regarding feminism was extensively discussed in committee connotes an invidious discrimination. Thus, if this view be accepted, an issue of fact remains. [¶] In these cases, as is made patent in the discussion in *Lynn* v. *Regents* [*of the University of California*] (9th Cir. 1981) 656 F.2d 1337, 1344-1345, the categorization of evidence with respect to the burdens of proof going forward (rather than the ultimate burden of proof and persuasion) is extremely difficult. It seems that the federal rule is as follows: Where there has been a stipulation (here, for motion purposes only) of a prima facie case of discrimination and the defendant has produced evidence of a proper purpose for denying promotion, the final step of the [*McDonnell Douglas Corp.*] structure demands a 'new level of specificity' but the trier of fact is to decide the issue of discrimination based upon the *entire* case, including the stipulation and various items going to credibility. *Kimbrough* v. *Secretary* [*of United States Air Force*] (9th Cir. 1985) 764 F.2d 1279, 1283." We respectfully disagree with the respondent court's analysis for three reasons.

First, in the academic context, promotion decisions necessarily involve a review of the professor's scholarship and expertise. At U.S.C., the criteria for promotion involved an evaluation of the candidate's scholarship, teaching and service. We have carefully reviewed both the 1983 and the 1987 ad hoc committee reports and the 1987 humanities division personnel committee report and there was nothing in those reports which indicated that Dr.

Miller's gender was considered by either committee. The fact that the committee evaluated her record as a feminist scholar in some detail did not create, under the facts of this case, a triable material controversy as to whether she was the victim of gender discrimination in 1983 or 1987. The two ad hoc committee reports criticize her scholarship, allocation of time, choice of journals, service, teaching, and letters of recommendation. The 1987 humanities division personnel committee report indicated that her scholarship was superficial. ■ In *Lynn* v. *Regents of University of California* (9th Cir. 1981) 656 F.2d 1337, 1344, the court of appeals held, "Without doubt, deficient scholarship is a legitimate, nondiscriminatory reason to deny salary increases or tenure." The same is true in terms of a promotion request. The three committee reports cited her scholarship, service, and teaching, not her gender or beliefs concerning the role of women in this society or Latin American societies, as the basis for the recommendation not to promote. Any discussions in the reports relative to her reputation as a feminist scholar are in the context of her record as a professor, not her sex or opinions concerning gender related issues. Finally, it was Dean Cohen who made the ultimate decision as to whether to promote—no evidence has been provided as to any evidence of gender bias on his part in connection with his decisions.

■ Second, the two cases relied upon by the respondent court did not warrant denying the summary issue adjudication motion. The first case, *Lynn* v. *Regents of University of California, supra*, 656 F.2d at pages 1344-1345, held that deficient scholarship is a legitimate reason for denying a professor's tenure or salary increase request. Moreover, in *Lynn*, the court of appeals concluded that the university had articulated a proper basis for refusing to grant tenure. (*Id.* at p. 1345.) The court did not reach the issue of whether the "reason 'articulated' by the University was 'a pretext or discriminatory in its application.'" (*Ibid.*) Rather, the court reversed the judgment because the plaintiff was denied due process of law in that she and her counsel were denied access to her personnel file but the defendant and the trial judge had read the file. (*Id.* at pp. 1345-1348.) Accordingly, the majority decision in *Lynn* did not support the order denying the summary issue adjudication motion in the present case.

The remaining case relied upon by the respondent court, *Kimbrough* v. *Secretary of United States Air Force* (9th Cir. 1985) 764 F.2d 1279, 1283 was inapplicable to Dr. Miller's gender discrimination claim. *Kimbrough* held that the trier of fact was free to reject the claimed nondiscriminatory reasons for failing to promote the plaintiff in that case. However, in *Kimbrough*, there was substantial evidence that the defendants alleged " 'legitimate, non-discriminatory reason[s]' " (*Texas Dept. of Community Affairs*

v. *Burdine, supra,* 450 U.S. at pp. 252-253 [67 L.Ed.2d at p. 215]) were a pretext for failing to promote her. The evidence in *Kimbrough* supporting the trial court's finding of a pretext included impermissible "command influence" in the promotion decision, a change in the job description after the exercise of the improper "command influence," conflicting evidence by key defense witnesses, and testimony by defense witnesses that the plaintiff was not promoted because she was unqualified despite the fact that the defendant stipulated that she was in fact qualified for the promotion. (*Kimbrough* v. *Secretary of the United States Air Force, supra,* 764 F.2d at pp. 1281-1282.) There is no substantial evidence in the present matter of any pretext or conflicting evidence such as was present in *Kimbrough.* All that was offered by Dr. Miller in response to the comprehensive showing of " 'legitimate, non-discriminatory reason[s]' " (*Texas Dept. of Community Affairs* v. *Burdine, supra,* 450 U.S. at pp. 252-253 [67 L.Ed.2d at p. 215]) were marginally relevant declarations concerning the formation of the 1983 ad hoc committee and a substantial amount of inadmissible evidence. Since there is no substantial evidence of a pretext, *Kimbrough* does not support the order denying the summary issue adjudication motion in the present case.

Third, the respondent court reasoned in its December 18, 1989, memorandum that the issue of whether the refusal to promote was for a " 'legitimate, non-discriminatory reason.' " (*Texas Dept. of Community Affairs* v. *Burdine, supra,* 450 U.S. at p. 253 [67 L.Ed.2d at p. 215]) could not be determined at the summary issue adjudication or summary judgment stage. ■ To the contrary, we are satisfied that when an employer proves as a matter of law there was a proper basis for refusing to promote an employee and no substantial responsive evidence was presented of the untruth of the employer's justification or a pretext, a law and motion judge may summarily resolve the discrimination claim. Every federal circuit has recognized that the question of a "legitimate, non-discriminatory reason for the employee's rejection" (*ibid.*) may be summarily determined prior to trial. (*Morgan* v. *Massachusetts General Hosp.* (1st Cir. 1990) 901 F.2d 186, 191; *Zahorick* v. *Cornell University* (2d Cir. 1984) 729 F.2d 85, 93-95; *Hankins* v. *Temple University* (3d Cir. 1987) 829 F.2d 437, 443; *Soble* v. *University of Maryland* (4th Cir. 1988) 778 F.2d 164, 166-167; *Aquamina* v. *Eastern Airlines, Inc.* (5th Cir. 1981) 644 F.2d 506, 508; *Canitia* v. *Yellow Freight Systems, Inc.* (6th Cir. 1990) 903 F.2d 1064 [Dock. No. 89-3119]; *Parker* v. *Federal Nat. Mortg. Assn.* (7th Cir. 1984) 741 F. 2d 975, 979; *Pierce* v. *Marsh* (8th Cir. 1988) 859 F.2d 601, 604; *Foster* v. *Arcata Associates, Inc.* (9th Cir. 1985) 772 F.2d 1453, 1461-1462; *Schwenke* v. *Skaggs Alpha Beta, Inc.* (10th Cir. 1988) 858 F.2d 627, 628; *Molerio* v. *Federal Bureau of Investigation* (D.C. Cir. 1984) 749 F.2d 815, 822-823.) Also,

several state Supreme Courts have upheld summary judgments in favor of employers when the defendant contended that there was a neutral, nondiscriminatory reason for a discharge. (*McKenzie* v. *Brigham & Women's Hosp.* (1989) 405 Mass. 432 [541 N.E.2d 325, 326-329]; *Grimwood* v. *University of Puget Sound, Inc.* (1988) 110 Wn.2d 335 [753 P.2d 517, 521-522]; *Harker* v. *The Federal Land Bank of Louisville* (Ky. 1984) 679 S.W.2d 226, 229-230.) Accordingly, the nature of the shifting burden of proof in *McDonnell Douglas* v. *Green* and *Texas Dept. of Community Affairs* is not such that summary issue adjudication may not be granted in appropriate cases. Based upon these considerations, we are satisfied that the respondent court should have granted the summary issue adjudication motion.

## VI. Disposition

Let a peremptory writ of mandate issue directing the respondent court to vacate and set aside its order of December 18, 1989, denying that part of the motion for summary adjudication of issues filed November 17, 1981, which sought to have the following issue adjudicated, "Miller cannot demonstrate any facts in support of her claim under Government Code section 12940 that she was denied promotions to full professor in 1983 and 1987 for sexually discriminatory reasons" and to enter a new and different order granting the motion as to that issue. U.S.C. is to recover its costs from Dr. Miller.

Lucas, P. J., and Ashby, J., concurred.