91 F.3d 150
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Ophie BELTRAN, Plaintiff-Appellant,
v.
The PRICE COMPANY/COSTCO dba Price Club; Anthony Stout;
Shawn Parks; Roxanne Nozolino, Defendants-Appellees.
 No. 95-55325.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 6, 1996.
Decided July 12, 1996.
 
 Before: FLETCHER, BEEZER, and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Ophie Beltran appeals the dismissal on summary judgment of her action against the Price Company, her former employer, and against three of her former managers. She does not appeal the dismissal of her action against her union, the International Brotherhood of Teamsters. Beltran was terminated on February 9, 1993, from her position as a clerk at a Price Company warehouse. She alleged against her employer breach of the collective bargaining agreement, and against her employer and her managers employment discrimination, retaliation, and defamation. We have jurisdiction, 28 U.S.C. § 1291, and we affirm.
 
 
 3
 * We review a grant of summary judgment de novo. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir.1995), cert. denied, --- U.S. ----, 116 S.Ct. 1261 (1996). We must determine "whether the evidence, viewed in a light most favorable to the nonmoving party, presents any genuine issues of material fact and whether the district court correctly applied the law." Id.
 
 II
 
 4
 Beltran brought a "hybrid" action under § 301 of the Labor Management Relations Act against the Price Company and her union, alleging breach of the collective bargaining agreement ("CBA") against the Price Company, and breach of the duty of fair representation against the union. The district court granted summary judgment for the Teamsters on the basis of the statute of limitations, and for the Price Company because Beltran failed to produce sufficient evidence to proceed to trial. Beltran argues that the district court erred. We disagree.
 
 
 5
 To succeed with such hybrid actions, an employee must prove both her employer's breach of the CBA and her union's breach of its duty of fair representation. DelCostello v. International Bhd. of Teamsters, 462 U.S. 151, 165 (1983). On appeal, Beltran fails to point to any evidence whatsoever presented to the district court that the Teamsters Union breached its duty of fair representation. Beltran's hybrid claim thus fails. See Hines v. Anchor Motor Freight, 424 U.S. 554, 570-71 (1976) ("To prevail against either the company or the Union, petitioners must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating breach of duty by the Union.").
 
 III
 
 6
 We turn to Beltran's other claims. She alleged that the Price Company fired her because of her Mexican ancestry, thereby violating Title VII, § 1983, and California's Fair Employment and Housing Act ("FEHA"). Under each statute, we apply the same analytic framework, that of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See University of Southern California v. Superior Court, 272 Cal.Rptr. 264, 268 (Cal.Ct.App.1990) (applying McDonnell Douglas to FEHA); Stones v. Los Angeles Community College Dist., 796 F.2d 270, 272-74 (9th Cir.1986) (applying McDonnell Douglas to § 1983).
 
 
 7
 Although she was a member of a protected class and was fired, her employer claimed she was fired for incompetence and gave numerous examples. At the summary judgment stage, Beltran must produce "some specific, substantial evidence," Wallis v. J.R. Simplot Co., 26 F.3d 885, 890 (9th Cir.1994), to rebut the employer's claims--something to show that her job performance was satisfactory and that the Price Company's justification was pretextual. Beltran has failed to do so. During the four months preceding her termination, Beltran received seven negative evaluations of her work. On October 7, 1992, Beltran received a formal reprimand for failure to place merchandise in the proper location; she admitted that she deserved this reprimand. On December 7, 1992, Beltran received a formal reprimand for failure to keep her paperwork up to date; she admitted that she "just totally forgot to do the mail." On December 10, 1992, Beltran received a formal reprimand for failure to keep merchandise records up to date; Beltran admitted that she "forgot about it because [the records] had fallen down to the bottom of the drawer."
 
 
 8
 On December 16, 1992, Beltran received a performance review that criticized her lack of timeliness, organization, efficiency, accuracy, and initiative. On January 20, 1993, Beltran received a formal reprimand for transferring merchandise too slowly. Also on January 20, 1993, Beltran received a letter noting a new failure to process paperwork on time, and warning her that she would be terminated the next time she violated company regulations. On February 9, 1993, Beltran was terminated when she ordered the destruction of merchandise without the prior approval of a manager and without properly documenting her action.
 
 
 9
 Beltran argues that while she may have violated the technical letter of company rules, she was in compliance with informal and widely followed understandings. However, Beltran had a long history of formal reprimands for failure to comply with company rules.[1] She was certainly on notice that compliance with the rules was expected of her. Indeed, one of Beltran's own declarants, Terry Williams, modified the declaration produced by Beltran's lawyer so that it reads: "Regarding Ophie Beltran's work she clearly knew the rules and regulations for merchandise returns. My experience with her was that she did not always follow the rules and regulations, as they were explained by her supervisors and managers." Given the explicit warning of January 20, 1993, that she would be fired the next time she failed to follow company rules, she would need substantial evidence to rebut the merchandise destruction incident that occurred several weeks later.
 
 
 10
 Beltran alleged that Anthony Stout made two bigoted comments: he ridiculed a Spanish radio station, and he referred to tardiness as "Mexican time." Stout was one of the managers who contributed to the decision to fire Beltran.[2] However, when asked in a deposition whether she was alleging that Stout was a bigot, Beltran admitted: "No. I can't say, you know. Because those were the only comments he made to me. And I cannot make an allegation from those two comments." Stout's comments are thus not grounds for Beltran to proceed to trial. See Merrick v. Farmers Ins. Group, 892 F.2d 1434, 1438 (9th Cir.1990) ("Comments suggesting that the employer may have considered impermissible factors are clearly relevant to a disparate treatment claim.... On the other hand, 'stray' remarks are insufficient to establish discrimination.").
 
 IV
 
 11
 Beltran also contends that the Price Company fired her in retaliation for her complaints of workplace discrimination. However, she advances no causal link between her employment discrimination complaint of April 1992 and her termination of February 1993. EEOC v. Hacienda Hotel, 881 F.2d 1504, 1513-14 (9th Cir.1989). The evidence indicates only that Shawn Parks, who made the ultimate decision to fire Beltran, knew about Beltran's complaint of April 1992; that Parks had a reputation for firing "bad apples"; that Stout once said to Beltran, "I'm going to get you"; and that Roxanne Nozolino once told another employee, "We're going to get rid of" Beltran. However, there is no evidence that Stout or Nozolino knew of Beltran's complaint; the only adverse action taken by Parks (his decision to fire Beltran) followed the complaint by ten months; the complaint did not mention Parks and in fact preceded his tenure at the warehouse; and the defendants had legitimate reasons to "get rid of" Beltran.
 
 V
 
 12
 Beltran brought several defamation claims against the defendants. The district court held that federal labor law preempted some of these claims, and declined to exercise supplemental jurisdiction over the remainder. Beltran argues that the court erred. We disagree.
 
 
 13
 Where judging the merits of a defamation claim would require the court "to decide whether [the employee's] discharge was justified under the terms of the collective bargaining agreement," the claim is preempted by § 301 of the Labor Management Relations Act. Edelman v. Western Airlines, Inc., 892 F.2d 839, 844 (9th Cir.1989). The statements Beltran claims were defamatory were her negative evaluations. Resolution of these claims would require an inquiry into the propriety of Beltran's termination in light of the CBA. Thus, they are preempted.
 
 
 14
 Beltran also alleged that during the course of a social telephone call, Nozolino read the contents of Beltran's personnel file to another employee. Further, that Nozolino said that Beltran is "into S & M and deviant sexual acts." Since these defamation claims can be resolved without reference to the CBA, they are not preempted. Tellez v. Pacific Gas & Elec. Co., 817 F.2d 536, 538 (1985), cert. denied, 484 U.S. 908 (1987). However, having dismissed all of Beltran's federal claims, the district court declined to exercise supplemental jurisdiction over these state defamation claim. See 28 U.S.C. § 1367(c)(3). It did not abuse its discretion by doing so. See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n. 7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine--judicial economy, convenience, fairness, and comity--will point toward declining to exercise jurisdiction over the remaining state-law claims.").
 
 VI
 
 15
 Beltran failed to produce sufficient evidence to proceed to trial on her CBA, discrimination, and retaliation claims; several of her defamation claims are preempted; and the district court did not abuse its discretion by declining to exercise supplemental jurisdiction over the remainder of her defamation claims. Accordingly, the grant of summary judgment for the defendants is
 
 
 16
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 In April 1990, she received a corrective consultation for filling out documents incorrectly. In June 1990, she received a written evaluation stating that she "needs to spend more time concentrating on her work and less time complaining, justifying and talking," that she has "a serious problem" with accuracy, and that "the appearance of her department is that of disorganization and chaos." In October 1990, she received a written evaluation stating that her "productivity is unacceptable" and that her department was disorganized. In November 1991, she received a corrective consultation for being absent from work without authorized leave. In March 1992, she received a corrective consultation for interfering with the performance of other employees and for "malicious gossip." In May 1992, she received a corrective consultation for filling out documents incorrectly
 
 
 [2]
 Stout co-wrote the negative performance review of December 16, 1992, and issued the formal reprimand of January 20, 1993