Filed 10/28/15  Valencia v. United Domestic Workers of America CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| MANUEL VALENCIA,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>UNITED DOMESTIC WORKERS OF AMERICA,<br><br>Defendant and Respondent. | C074086<br><br>(Super. Ct. No. 3420110016444CUWTGDS) |

Plaintiff Manuel Valencia worked for defendant United Domestic Workers of America, AFSCME Local 3930, AFL-CIO (United Domestic) for five months as an assistant legislative director.  After five months, plaintiff's position was eliminated. Plaintiff filed suit against United Domestic, alleging his termination was motivated by discriminatory intent based on a disability and constituted retaliation for his complaints about disability discrimination.  United Domestic moved for summary judgment and the trial court granted the motion.  Plaintiff appeals, alleging United Domestic's actions were not for legitimate business reasons and that he was subject to an ongoing pattern of discrimination.  We shall affirm the judgment.

1

## STANDARD OF REVIEW

A defendant moving for summary judgment must show that the plaintiff cannot establish one or more elements of the cause of action or cannot refute an affirmative defense established by the defendant. (Code Civ. Proc., § 437c, subd. (o).) "From commencement to conclusion, the moving party bears the burden of persuasion that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. There is a genuine issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 845, fn. omitted; see *Slovensky v. Friedman* (2006) 142 Cal.App.4th 1518, 1522.)

We review de novo the record and the determination of the trial court. (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476.) First, we identify the issues raised by the pleadings, since it is these allegations to which the motion must respond. Second, we determine whether the moving party's showing has established facts negating the opponent's claims and justifying a judgment in the moving party's favor. When a summary judgment motion prima facie justifies a judgment, the final step is to determine whether the opposition demonstrates the existence of a triable issue of material fact. (*Barclay v. Jesse M. Lange Distributor, Inc.* (2005) 129 Cal.App.4th 281, 290.)

When an employee alleges employment discrimination, the employee must first establish a prima facie case of discrimination. The employer can then rebut the employee's claim by offering a legitimate, nondiscriminatory reason for its employment decision. If substantial evidence is offered in support, the employer is entitled to summary judgment unless the plaintiff produces substantial responsive evidence that raises a triable issue of fact material to the employer's showing. (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 356-357 (*Guz*); *Scotch v. Art Institute of California* (2009) 173 Cal.App.4th 986, 1005.) The evidence must demonstrate the existence of a

2

material controversy as to pretext or discriminatory animus on the part of the employer. (*University of Southern California v. Superior Court* (1990) 222 Cal.App.3d 1028, 1039; *Martin v. Lockheed Missiles & Space Co.* (1994) 29 Cal.App.4th 1718, 1735.) It is not enough to make a bare prima facie showing or to simply deny the credibility of the employer's witnesses or to speculate as to discriminatory motive. (*Hersant v. Department of Social Services* (1997) 57 Cal.App.4th 997, 1004-1005; *Compton v. City of Santee* (1993) 12 Cal.App.4th 591, 595-596; *Wallis v. J.R. Simplot Co.* (1994) 26 F.3d 885, 890.)

Moreover, the employee will not prevail by simply showing the employer's decision was wrong or mistaken, since the factual dispute is over whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent. Instead, the employee must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a trier of fact could legitimately find them " 'unworthy of credence' " and infer that the employer did not act for the asserted nondiscriminatory reason; the employee must show that the employer's proffered reason is pretextual. (*Arteaga v. Brink's, Inc.* (2008) 163 Cal.App.4th 327, 342-343 (*Arteaga*); see also *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792 [36 L.Ed.2d 668] (*McDonnell Douglas*).) The ultimate issue is simply whether the employer acted with a motive to discriminate. (*Guz*, *supra*, 24 Cal.4th at p. 358.) On summary judgment, the question is whether a triable issue of fact exists as to the employer's motivations.

With these considerations in mind, we summarize the pertinent allegations of the complaint and motion for summary judgment along with relevant portions of the parties' separate statements of disputed and undisputed facts and supporting evidence. We then assess the motion in light of the parties' factual showings and standards of review to determine whether triable issues of fact remain.

3

## FACTUAL AND PROCEDURAL BACKGROUND

**The Complaint**

The complaint sets forth three "causes of action": FEHA disability discrimination (Cal. Fair Employment & Housing Act; Gov. Code, § 12900 et seq.), FEHA retaliation, and wrongful termination in violation of public policy.

As to the first two causes of action, plaintiff alleges the following ultimate facts: that he is a person with physical and psychological disabilities, as defined by FEHA, including an anxiety disorder that renders him unable to fly. Though granted an accommodation, his supervisor, Jovan Agee, director of political and legislative affairs, nonetheless chastised him for the disability in person and in a performance evaluation, and later stripped him of his supervisory authority. United Domestic then demoted him, placed him on administrated leave, terminated his lobbyist registration, and ultimately terminated his employment.

With respect to the second cause of action for retaliation, the complaint alleges that plaintiff filed a discrimination charge with the Equal Employment Opportunity Commission (EEOC) and informed Agee he had a February 1, 2011, meeting with the EEOC to discuss the charge. On February 3 United Domestic terminated his employment. Plaintiff's complaints of disability harassment and discrimination were motivating factors for the decision to terminate his employment.

With respect to the third cause of action for wrongful termination in violation of public policy, the complaint alleges that United Domestic's decision to terminate plaintiff was motivated by his status as a person with disabilities, and/or his requests for accommodation, and/or his complaints about illegal discrimination.

**Summary Judgment Motion**

United Domestic filed a general denial to the complaint and moved for summary judgment or summary adjudication. The motion, accompanied by United Domestic's

4

separate statement of undisputed facts, supporting declarations, and other exhibits, sets forth the following account of relations between plaintiff and United Domestic:

### United Domestic

United Domestic is a labor union affiliated with the American Federation of State, County and Municipal Employees. The union represents employees working in the in-home supportive services (IHSS) system who provide home care services for eligible clients. United Domestic represents IHSS workers for collective bargaining purposes. United Domestic has a staff of approximately 73 employees who work in various offices throughout the state.

Each employee is provided an employee handbook. Under the terms of the handbook, plaintiff was employed on an at-will basis and could be terminated at any time without cause. In addition, the handbook provides that disabled employees shall be provided reasonable accommodation where the disability involved affects performance of job functions. United Domestic gave plaintiff a copy of the handbook, which he reviewed.

### United Domestic's 2010 Reorganization and Plaintiff's Hiring

Prior to hiring plaintiff, in spring 2010 United Domestic began reorganizing its political and legislative department. The reorganization resulted in the creation of the positions of assistant legislative director and assistant political director, to work under the supervision of Agee. United Domestic created five regional political coordinators who reported to the assistant political director.

United Domestic hired plaintiff, a graduate of UC Davis School of Law, on August 27, 2010, as assistant legislative director. The job description stated plaintiff's duties were to "assist in coordinating [United Domestic's] advocacy to California Legislators, state agencies, and statewide elected officials, primarily through lobbying, relationship-building with decision-makers, policy analysis, and training member activists." The job also included the "[a]bility to travel and willing[ness] to work long

5

hours and weekends, as needed." Plaintiff shared supervision of the regional political coordinators with assistant political director Mathew Kostrinsky.

During his employment, United Domestic assigned plaintiff to a variety of work outside of his job description, including political advocacy work supervised by Kostrinsky, assignments normally delegated to regional political coordinators, budgetary analysis normally handled by political and legislative department budget and policy analyst Kristina Bas Hamilton, litigation discovery work in pending lawsuits, and media communications. During his employment, plaintiff traveled for work in other counties, including Merced, Modesto, and San Diego.

Plaintiff states that shortly after he began working for United Domestic, he told Agee he was unable to travel by airplane because of an anxiety disorder. Plaintiff requested that he not be required to fly. On at least two occasions, Agee granted plaintiff's request. Plaintiff attended a staff meeting in San Diego by video conference and drove to a second San Diego meeting.

### *Further Restructuring*

United Domestic's executive director, Doug Moore, is the union's chief executive, with sole authority to make organizational changes, including creating or eliminating staff positions and changing job descriptions and titles. Only Moore can hire United Domestic employees, terminate their employment, or approve disciplinary measures.

On September 13, 2010, Moore advised senior staff, including Agee, that after reviewing e-mails between executive and senior staff it was clear there was confusion over roles and responsibilities. Two weeks later, Moore announced a reorganization in early 2011 caused by "departmental feuds." Moore stated, "I will . . . announce future staff restructuring in early 2011 that will alleviate this internal bickering." The e-mail announcing the reorganization was sent to staff, including plaintiff.

On November 12, 2010, Agee sent an e-mail to Moore recommending that United Domestic discharge plaintiff and Kostrinsky for inadequate performance. According to

6

Agee, the political and legislative department suffered from internal dysfunction because plaintiff and Kostrinsky could not work together. Agee recommended their two positions be consolidated into one position that would handle all "political/legislative activities at the local level that I now deal with on the state level." The position would be called "Assistant Political and Legislative Director," and Agee believed the consolidation would eliminate the dysfunction in the department.

However, Moore did not terminate plaintiff and Kostrinsky. Instead, in December 2010 Moore moved the regional political coordinators from the joint supervision of plaintiff and Kostrinsky to supervision by Kostrinsky alone. Moore wanted the coordinators to focus on local political work, as opposed to the legislative work that plaintiff supervised.

On December 14, 2010, Agee notified plaintiff of the change when he gave plaintiff his only written performance evaluation. According to Agee, plaintiff could continue to assign work to the regional political coordinators, but only after obtaining Kostrinsky's or Agee's approval.

### Plaintiff's Response

Plaintiff sent an e-mail to United Domestic's human resources director, Manuel Bejarano, on January 2, 2011. According to plaintiff, Agee harassed him and subjected him to a hostile work environment; Agee told plaintiff to overcome his disability, the anxiety disorder that prevented him from flying; and Agee stripped plaintiff of his supervision of the regional political coordinators without cause. Plaintiff provided a medical note supporting his request for a work accommodation "to travel by automobile when necessary." He asked United Domestic to help him in dealing with Agee because "under the current hostile work environment, it is physically and emotionally unhealthy for me to deal with [Agee] in the workplace."

United Domestic placed plaintiff on paid administrative leave and commenced an investigation. The union interviewed Agee, plaintiff, and other employees. United

7

Domestic determined that, although plaintiff's December 14 performance evaluation did not explicitly discuss any medical condition or flying, Agee had orally advised plaintiff that the word "obstacles" in the performance evaluation referred to plaintiff's "fear of flying."

On January 10 United Domestic met with plaintiff. Plaintiff asked for an accommodation by granting him "the ability to drive; the ability to use our video-conference system that was recently set-up and teleconference." United Domestic then provided plaintiff with a written memorandum stating it would remove the December 14 evaluation from his personnel file and would not require him to travel by plane for work. In addition, United Domestic directed plaintiff to return to work from administrative leave on January 18, 2011. United Domestic suspended Agee without pay for 10 working days for e-mailing a political and legislative department staff member in violation of Moore's instruction and for mishandling plaintiff's evaluation.

Prior to plaintiff's return, Jeremy Wright, a regional political consultant, informed United Domestic he was taking medical leave for an indeterminate period of time. The union temporarily assigned some of Wright's duties to plaintiff. On January 18 Agee gave plaintiff various assignments, including drafting policy analyses for three legislative bills, performing budget analysis, and filling in for Wright in his absence. Agee also told plaintiff United Domestic was revoking his lobbyist registration because the union would not be sponsoring legislation in 2011. United Domestic needed plaintiff to assist with budget alternatives and to fill in "where we have voids in our regions." Plaintiff's pay and title were not changed.

On January 19 plaintiff informed United Domestic that Agee had retaliated against him by revoking his lobbyist registration. Moore met with plaintiff and agreed to let him retain his lobbyist registration. Moore also informed plaintiff he would be temporarily relocated to Bakersfield, where Wright had been stationed. The reassignment would last

less than three months and plaintiff would resume his lobbying duties afterward. Plaintiff agreed.

However, a few days later, plaintiff notified United Domestic he could not relocate for medical reasons. Plaintiff had a weekly appointment in Sacramento, and making the drive back and forth "would prove too onerous on me, physically and mentally." In addition, plaintiff had special dietary needs that required "a refrigerator and proper cooking facilities." United Domestic offered to accommodate plaintiff by paying for housing that had a refrigerator and cooking facilities, and changing his out-of-town work schedule to Monday through Wednesday, permitting him to drive back during work hours on Thursdays in order to make his Friday appointments. The union also requested plaintiff supply medical documentation to support his request.

Plaintiff, on January 30, gave United Domestic a medical note stating his treatment consisted of weekly one-hour appointments, and plaintiff needed to be in Sacramento four days a week in order to "engage fully in treatment." The following day, plaintiff advised Bejarano and Agee that he was taking off February 1 to meet with an EEOC investigator.

### 2011 Reorganization

On February 1 Moore decided to eliminate the positions of assistant legislative director, the regional political consultant for Riverside, and a lead organizer position in Orange County. That day, United Domestic sent an e-mail to plaintiff stating that based on his medical note, the union believed plaintiff was "unable or unwilling to carry out the temporary assignment in the Bakersfield field office," and that he would be placed on paid administrative leave while the union considered "this new information." The e-mail requested that plaintiff meet with United Domestic on February 4 to discuss his employment situation.

On February 3 plaintiff notified United Domestic that he would not meet to discuss his employment. Plaintiff also notified the union that he had filed a charge of

9

discrimination with the California Department of Fair Employment and Housing. Bejarano responded that plaintiff's failure to meet would be considered insubordination.

Plaintiff repeated in writing his refusal to meet with United Domestic. In an e-mail, Bejarano informed plaintiff that "[b]ecause you have refused to attend the meeting, we will communicate to you in this letter what we were going to tell you in person." Bejarano stated that as part of a staff reorganization and reduction in force necessitated by cuts to the IHSS program, United Domestic was eliminating the assistant legislative director position. One purpose of the proposed meeting would have been to ascertain plaintiff's interest in being considered for any other open staff position. In the e-mail, Bejarano stated United Domestic was "still willing to have this conversation, if you so desire." Plaintiff never responded to Bejarano's e-mail, believing the e-mail was his termination letter.

On February 4, 2011, Bejarano flew to Sacramento to meet with plaintiff. Plaintiff did not appear at the scheduled meeting, nor did he reschedule. Later that day, United Domestic again mailed plaintiff notice of his position's elimination but also noted, "We will meet with you to ascertain your interest in being considered for any other open staff position." Plaintiff failed to respond to this second offer. February 4, 2011, was also plaintiff's last day of employment. His duties at United Domestic were either eliminated or absorbed by existing positions.

### United Domestic's Further Reorganization

By late March 2011 United Domestic's reorganization had resulted in the elimination of eight positions and the creation of five new positions. The eliminated positions included assistant legislative director, assistant political director, all five regional political coordinators, and one lead organizer position. The newly created positions included chief of staff, assistant political and legislative director, assistant field/political campaign director, and two budget/junior policy analysts. Employees in

10

eliminated positions were given the opportunity to transfer within United Domestic or apply for the newly created positions, which were only posted internally.

United Domestic reorganized further in August 2011, and again the organization created new positions. The chief of staff position was eliminated. The following month United Domestic eliminated the assistant political and legislative director position. Again, employees whose positions were eliminated were offered alternative employment in the organization.

**Plaintiff's Opposition**

As an employment discrimination case evolves, the plaintiff must commonly counter evidence by the employer that the adverse employment action was taken for a legitimate nondiscriminatory reason with evidence that the employer's stated reasons were not its true reasons, but were a pretext for discrimination. The employer's motives are also crucial in assessing claims of retaliation and wrongful termination in violation of public policy. The plaintiff must frequently offer evidence that the motive for the adverse action taken was not as represented by the defendant employer. The evidence offered by the parties may conflict, and it is not our task in a summary judgment proceeding to resolve the conflict; the plaintiff need only establish a triable issue of material fact as to the reason for his or her termination. (*McDonnell Douglas*, *supra*, 411 U.S. 792; *Guz*, *supra*, 24 Cal.4th at p. 358; *Arteaga*, *supra*, 163 Cal.App.4th at pp. 342-343.) Here, the trial court found plaintiff failed to offer evidence demonstrating the adverse employment actions were a response by United Domestic to plaintiff's anxiety disorder, or to his complaints of discrimination. Plaintiff insists he presented numerous triable issues of fact in that regard, as set forth in his statement of disputed and undisputed facts and in his briefing on appeal.

First, plaintiff contends the record established a link between his disability and his supervisory duties being taken away from him. When he was hired, plaintiff argues, his duties included direct supervision of the regional political coordinators. After he

11

informed his supervisor of his inability to fly due to general anxiety disorder, United Domestic stripped plaintiff of those supervisory duties. Therefore, plaintiff argues it is reasonable to infer that he was stripped of those duties because his disability interfered with his ability to meet with the regional political coordinators.

Prior to plaintiff's hiring, the assistant legislative director position had no supervisory authority over the regional political coordinators, who fell under the purview of the assistant political director. In September 2010 Moore approved plaintiff's authority over the regional political coordinators. In early December 2010 Moore returned supervision of the regional political coordinators from the assistant legislative director, plaintiff, to the assistant political director, Kostrinsky. In an e-mail the day of the transition, Moore expressed a desire that the regional political coordinators focus on local political work, under Kostrinsky, as opposed to legislative duties, under plaintiff.

Plaintiff cites Agee's testimony that it was his idea to strip plaintiff of his supervisory duties and that he did so. However, the record reveals Moore alone possessed the authority to remove plaintiff's supervisory duties over the regional political coordinators. Moore, as United Domestic's executive director, had the sole authority to make staff changes, including changing job descriptions or job titles. While other senior staff might make recommendations, Moore had the final say. He was the only United Domestic supervisor with the authority to hire, fire, or approve discipline of employees. Plaintiff presented no evidence that Moore knew of his accommodation requests or medical condition prior to relieving plaintiff of his supervisory duties.

Plaintiff also claims his negative evaluation was motivated by his general anxiety disorder and its impact on his ability to travel. The negative evaluation, plaintiff argues, was part of a larger pattern of adverse actions. A negative evaluation is actionable only if used as a basis to detrimentally alter the terms and conditions of the plaintiff's employment. (*Akers v. County of San Diego* (2002) 95 Cal.App.4th 1441, 1456.)

Here, United Domestic rescinded plaintiff's December 14, 2010, performance review in its entirety on January 11, 2011, following an investigation into plaintiff's allegations against Agee. The rescission took place nine days after plaintiff complained about Agee's evaluation and was accompanied by a formal written memorandum by United Domestic advising him of the removal and telling him he would not be required to travel by plane. Plaintiff argues, "the fact remains that Respondent attempted to give the negative evaluation." However, plaintiff offers no evidence that the negative evaluation, quickly rescinded, was used as a basis to alter his employment status.

In addition, according to plaintiff, the record also establishes a retaliatory link between his disability and United Domestic's termination of his lobbyist registration. He argues he was "temporarily demoted" when United Domestic "informed him of its intent to rescind his lobbyist registration."

Moore decided to terminate plaintiff's lobbying registration because United Domestic did not intend to sponsor legislation in 2011, a decision Agee told plaintiff about on January 18, 2011. After Agee notified plaintiff of the decision, plaintiff stated he believed the move was retaliatory. Moore met with plaintiff on January 21, 2011, and agreed not to terminate his lobbying rights. Whatever plaintiff may have believed, as with Agee's negative evaluation, the rescinded decision to terminate plaintiff's lobbying registration does not support plaintiff's claim of an adverse employment action.

Plaintiff argues United Domestic discriminated against him by attempting to transfer him to Bakersfield. The transfer, plaintiff contends, was unwanted and far from the Sacramento location that was conducive to the performance of his lobbying duties.

After regional political consultant Wright notified United Domestic in January 2011 that he was taking an open-ended medical leave, Agee assigned plaintiff to help cover for Wright. Subsequently, Moore told plaintiff he would be temporarily relocated to Bakersfield, where Wright had been stationed. The reassignment would last no more than three months, and at the conclusion, plaintiff would resume his lobbying duties.

13

Plaintiff agreed to the assignment. However, a few days later, plaintiff refused the transfer based on his medical condition. In response, United Domestic offered to accommodate plaintiff by paying for housing with appropriate facilities and scheduling him for Monday through Wednesday to permit him to drive home on Thursdays for his Friday medical appointments in Sacramento. United Domestic presented a legitimate reason for transferring plaintiff to Bakersfield and attempted to accommodate his medical needs. Ultimately, plaintiff never transferred to Bakersfield. United Domestic's attempted transfer of plaintiff to Bakersfield does not support his claim that it used Wright's leave as a pretext for disability discrimination.

Plaintiff contends that United Domestic's decision to place him on unwanted administrative leave was in retaliation for his submission of a note from his doctor. He terms United Domestic's action as "unwarranted discipline and discriminatory retaliation."

United Domestic put plaintiff on paid administrative leave for four days on February 1, 2011, following his refusal to perform Wright's duties and relocate despite his earlier agreement. After plaintiff notified United Domestic that he needed a work location restriction to Sacramento and had dietary restrictions that restricted his ability to travel, United Domestic agreed to accommodate the requests but asked for supporting documentation from a physician. United Domestic believed the note provided did not relate to plaintiff's accommodation requests, placed him on paid leave, and requested that he further discuss his accommodation request. Clearly, plaintiff's paid leave was not "retaliation" or an adverse employment action, but a response to his rejection of a work assignment and changing accommodation requests.

Finally, plaintiff argues the record contains direct evidence of United Domestic's discriminatory animus against him. He cites evidence that his supervisor expected him to resolve his disability and cure his fear of flying. In addition, he argues, United Domestic's own internal investigation revealed that plaintiff's disability played an

14

improper part in his evaluation and that his supervisor was disciplined for that. But he ignores the progression of events leading up to his termination as a record that establishes a legitimate reason for United Domestic's action. After United Domestic placed plaintiff on paid administrative leave, it sent an e-mail on February 1, 2011, directing him to meet with Bejarano and Gary Voice, director of finance and administration, on February 4, 2011, to discuss his employment situation. On February 3, 2011, plaintiff told United Domestic he would not meet to discuss his employment. Bejarano responded that plaintiff's failure to meet would be considered insubordination. Plaintiff reasserted his refusal to meet with United Domestic representatives.

In response, Bejarano notified plaintiff that "[b]ecause you have refused to attend the meeting, we will communicate to you in this letter what we were going to tell you in person." As part of the staff reorganization and budget cuts, United Domestic was eliminating the assistant legislative director position. The e-mail also stated: "The second purpose of tomorrow's meeting was to ascertain your interest in being considered for any other open staff position. We are still willing to have this conversation if you so desire. If so, please contact me to make arrangements.

"Your last day of work in your current position will be February 4, 2011, though you will be paid for the current pay period through February 15, 2011. You also [will] be paid for your unused vacation balance."

United Domestic also sent plaintiff a letter on February 4, 2011, reiterating the points made in the earlier e-mail. Plaintiff failed to respond to either missive.

As plaintiff acknowledges, during United Domestic's 2011 reorganization, "no employee whose position was eliminated was laid off, where they agreed to transfer or apply for alternative employment with [United Domestic]." However, plaintiff argues that he was the "only one who was terminated as a result of the 'reorganization.' " According to plaintiff, his termination resulted from United Domestic's retaliation for his inability to travel for his job.

15

We disagree. Plaintiff refused United Domestic's repeated requests to meet before his termination to discuss continuing employment. United Domestic accommodated every other employee impacted by the reorganization; plaintiff's intransigence led to his ultimate termination. All along the way, United Domestic attempted to respond to plaintiff's complaints about his supervisor's mistreatment. It rescinded the negative evaluation, restored plaintiff's lobbying status, and attempted to accommodate his new requirements in the Bakersfield transfer. However, when United Domestic asked plaintiff to discuss alternative positions within the organization, plaintiff flatly refused. We find the trial court did not err in granting summary judgment, since plaintiff failed to establish a triable issue of fact as to whether his asserted disability had any connection to his termination.

This failure also dooms plaintiff's cause of action for retaliation. The trial court correctly found: ". . . Plaintiff has failed to demonstrate any evidence which would give rise to a triable issue of fact that [United Domestic's] actions in restructuring [its] operations and changing Plaintiff's position, title and duties was in retaliation for any protected activity engaged in by Plaintiff."

Plaintiff claims United Domestic retaliated against him after he filed a discrimination charge with the EEOC on January 4, 2011. However, plaintiff presents no evidence that United Domestic was aware of the complaint before his termination. Instead, plaintiff states he advised Agee on January 31, 2011, that he had a February 1, 2011, meeting with the EEOC. "It can reasonably be inferred, therefore, that as [United Domestic] was aware of [plaintiff's] meeting with EEOC shortly before it decided to eliminate his position, the fact that he was doing so was a substantial factor in eliminating his position." We are not persuaded by plaintiff's attempt to link his termination to his pursuit of an EEOC claim. Although plaintiff's supervisor was aware of an impending meeting, there is no evidence that Moore, who made the final decision, knew of the

16

meeting.  Instead, as we have determined, plaintiff's termination was based on his refusal to meet with United Domestic to pursue other employment opportunities.

Plaintiff has failed to establish a material factual dispute as to whether discriminatory animus was behind any of United Domestic's actions.

## DISPOSITION

The judgment is affirmed.  United Domestic shall recover costs on appeal.


        RAYE        , P. J.


We concur:


     BLEASE     , J.


     BUTZ      , J.